The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D'Armond presiding. Good afternoon, counsel. Our next case is 4-21-0538, People of the State of Illinois v. Terrence Thomas. Counsel for the appellant, please state your name for the record. Good afternoon, Your Honor. Gigi Gilbert, G-I-G-I, on behalf of the appellant, Terrence Thomas. And counsel for the appellate, could you please state your name for the record? Yes, good afternoon, Your Honor. Adam Rodriguez, R-O-D-R-I-G-U-E-Z, for the People of the State of Illinois. All right. Thank you, counsel. Counsel for the appellant, you may proceed. Okay. May it please the Court. Your Honor, in this wholly circumstantial constructive possession case, the defense attorney stood by as numerous hearsay statements and documents were admitted into evidence. Judge, first of all, we're requesting that this case be outright reversed. The hearsay testimony of Officer Hunt, who never testified at trial, although he was discarded from the silver sedan, were three packets of a controlled substance. Officer Wolf testified to this testimony without any objection from the defense counsel, although Officer Wolf was in a different vehicle over a block behind Detective Hunt's car and did not see anything thrown from a silver sedan. Judge, this in and of itself is reversible error, and we ask that that case be reversed outright. There was no testimony whatsoever that my client, Terrence Thomas, knew that these items were inside some silver sedan that was registered to him. They have this hearsay testimony of inadmissible cell phone records that Tasha Cunningham testified that she called somebody named Streets and that it was Streets who she set up this buy-bust with. However, that original cell phone number, as well as a subsequent cell phone number, comes back to somebody named Boost Boost without even an address or a formal name, because these are prepaid cell phones. So there was no picture of Streets in her cell phone. The detective, Roseman, made a show-up ID of one person that he said was Terrence Thomas that he photo. But additionally, besides that, you had no testimony from Detective Rosen of why he thought this person that Tasha Cunningham identified as Streets was, in fact, my client, Terrence Thomas. There was nothing, not an ounce, a scatilla of information how Detective Rosen, Roseman, made the connection of Streets being Terrence Thomas. You then had no objection. Also, may I ask a question? I thought trial counsel indicated that they just didn't want the officer to testify how he knew Terrence Thomas. Well, Judge, I don't have that in the trial transcript. I have the trial transcript, and that's nowhere in the trial transcript. Detective Rosen testified without objection that he showed Tasha Cunningham a booking photo, and we would submit to you that that phrase in of itself is prejudicial, a booking photo of Terrence Thomas, and in the one photo show-up, Ms. Tasha Cunningham identified Streets as Terrence Thomas. She never knew his name whatsoever until she received a subpoena to come to trial. Right. The question wasn't whether she could identify Terrence Thomas. The question was whether Terrence Thomas was Streets, right? Right, and we would submit to you- She dealt with Streets. She dealt with him face-to-face. She dealt with him over the phone. There was no question she could identify the individual named Streets, is there? Well, who she's saying is Streets, she never knew any name for him, but we had no- So the question is not whether she can identify the defendant. The question is, she identifies Streets, and then the officer knows that the only person that he's aware of in the community with the nickname Streets is Terrence Thomas, so the real question is, is Streets Terrence Thomas? So the officer then gives her the picture of the one person he knows to be nicknamed Streets, and she says, yeah, that's Streets. Isn't that what it amounts to? Well, Judge, there was no testimony during the trial in the record of how Detective Roseman knew that who Tasha Cunningham was talking about the name Streets was Terrence Thomas. There was nothing connecting how he knew that. The testimony went in that he showed him a booking photo. That's what they said in front of the jury. They showed him, and it was on redirect examination. And you're saying there was no pre-trial conference at which the attorney indicated his objection was the manner in which the officer would be able to identify Terrence Thomas. I don't have that in the trial transcripts. I don't have any pre-trial motions weren't filed, and I don't have a motion in limine excluding their testimony, and I don't have any transcripts of any pre-trial conference where the defense attorney said he didn't want it The first thing is really this hearsay testimony about Officer Hunt and what he saw, and he never testified at trial. And then you have Officer Wolf who testified in a car that's two blocks away, just what Hunt told him. He didn't even say, I saw the bags being thrown out of the vehicle. He said Deputy or Officer Hunt told me he saw some bags being thrown out of the vehicle. I went to the area and we covered three bags, trial exhibits one through three from that area. So this was blatant hearsay, classic hearsay, blatant hearsay, and not at all objected to by defense counsel. You then have the admission of these records that Judge Weiss submitted both had an insufficient foundation as well as even if they would have had the proper foundation, which they did not from the business record exception, the statements contained therein were also hearsay. So they had a statement that in the customer notes that it was indicated that the cell phone number was changed from 217-775-8197. So you're talking about the Sprint records, right? Yes, the Sprint records had customer notes that were testified to. Were they submitted with self-authenticating certifications? Well, Judge, what was submitted was different from what was put into evidence. So you had a CD that was Exhibit 6 that was put into evidence by the state without any objection, again, from defense counsel. And the nature of the certification was never read into evidence. What was read in was an interpretation that we would submit was also hearsay by Detective Daly of 6A, which he said were the highlighted calls from Tasha Cunningham to Streets. Now, can I back up again? Was there no certification tendered and admitted by the trial court? Judge, the actual certification was contained on a CD that was never read into the record and never went back to the jury. Well, so what? I mean, you make a big deal of that. And my question when I read it was, well, so what? The question is whether it's admissible, and that's a decision by the trial court. The trial court determines whether the documents are admissible. The issue of what goes back to a jury is a completely different matter. The fact that the certification itself doesn't go back to the jury does not then make it inadmissible. It's just one of the pieces of evidence, as in many jury trials, that are not going to go back to the jury because they don't necessarily need them for their purposes. The only purpose for the certification is getting it through the door of admissibility, not submitting it to the jury, because somehow that is going to affect their ability to glean the authenticity of the document or not. The question of authenticity is for the judge, not for the jury. Well, Your Honor, what happened in this case is Exhibit 6, which was a CD, was omitted without objection. Again, defense counsel, and we're arguing in effect. I know you've used the term without objection throughout your brief. And sure, I'm not sure you're supposed to object to every piece of evidence that the state submits. Normally, you just object to those things that are truly objectionable. So my question is, what's objectionable about the certification? Well, Judge, the certification wasn't read into record, but when we did look at it and order it, it wasn't clear that that was under penalties of perjury. And we would submit to you that even if the certification was proper, there were still hearsay objections that could have been made that weren't made to the records themselves. So even if they get past the first prong, that the records weren't certified, even if you find that even though it wasn't read into the record, that was somehow on the CD, and that was enough for defense counsel not to object to it. Judge, there's still the hearsay problems of the customer notes being recorded by a human declarant, and that coming into hearsay for the truth of the was switched on June 11th at a time, 8.41 p.m. Go ahead. Judge, so there was not only the inadmissible hearsay of Officer Hunt, the hearsay records that the customer service notes indicate from Sprint that a human declarant wrote down that someone called in, that the phone number was switched on June 11th, and then you also have the hearsay testimony that the phone number was registered, both phone numbers, or you have just the second phone number, pardon me, the 7927 phone was registered to someone named Boost Boost. At no time do you have any testimony that either one of these phone numbers ever were registered to Terrence Thomas. What phone number did Ms. Cunningham call? Well, Judge, they're saying she called 217-775-8197. However, she didn't testify to that. What phone number did the defendant give? The defendant gave to Detective Roseman a 312-519-7927. What was the first phone number the defendant gave? He only gave one number to the detective. I didn't ask who he gave it to, right? What was first phone number the defendant gave? The phone number he gave was the 217-519-7927 number. He gave to... The same one that Ms. Cunningham called. I'm sorry, then I misspoke. The number that she called was 217-775-8197. That's the number she called. However, she didn't testify to two things. One, the number that she called. She didn't testify to that. And two, to her cell phone number. So you have neither one of those in the record. Well, I think you do because they took pictures of them. You have just the pictures. And she said she didn't know Street's number because it was just in her phone. So you've got the detective and the informant both there in the room. She dials the number and the detective takes the picture of her screen on her phone, correct? Right. We would still submit that without... You don't have the authentication of her cell phone provider. So you don't have her cell phone number. You don't need that for a text message. You know that. And we would submit to you that those text messages were an admissible hearsay in addition to the hearsay from the cell phone records. The text messages by her and received by her. That's all the admissibility you need. They're no different than any other documentary piece of evidence. You're trying to put them into some special classification, which the courts have for quite some time now made clear, no, they don't occupy any special status like computer records. They're documents just like any other documents. And if you've got the author of the document or the receiver of the document and they're capable of identifying them, that's all you need. You know what that's what the law is. I'm assuming. Judge, the way that they went in, you don't have the receiver because you don't have the person on the other end. And in fact, Ms. Cunningham even admitted that she didn't know who was behind those texts. You only need one side. You need the receiver of the text or the author of the text. She's the author and the receiver. Judge, she actually testified during the jury trial that she could not say who was on the other end of the phone in the text messages because she couldn't see, obviously, through the phone. So she said, I don't know who's on the other end of the phone in the text messages. She admitted that. Right. She just knows that it's the number that she knows for streets and she's texting streets for a drug deal like she's done several times before, orders up the drugs, tells him where he's supposed to go and doesn't have to give him the address because he's been there before. Judge, all that is true. And if we would have had any testimony that Terrence Thomas was in the car, that'd be different. But the way the testimony went in, they couldn't see who was in the car. They didn't know how many people were in the car. Ms. Tasha Cunningham testified she didn't know who was sending or who she was sending the text to because she couldn't see on the other side of the from Sprint. Not only even if you get around the business records exception, the hearsay testimony regarding the documents that the phone numbers were switched and even the highlighted portions in 6A that the calls were from Tasha Cunningham. She didn't testify to that. She didn't testify to any numbers. Her cell phone provider didn't testify. Was the actual dash cam video admitted? Without objection, the dash cam video was admitted. And we would submit to you that that was also ineffective assistance to counsel because the officer who testified, Officer Wolf, he didn't see the whole chase because he got out of the car and got in another detective's car. And that car was one or two blocks behind the incident. Was the audio also made a part of the record? Yes. Okay. So you're aware then that the jury heard that there were two occupants in the vehicle. The jury heard that one of them was identified and heard the officer when he got out of the vehicle and was talking to the other two identified Terrence Thomas in some fashion. Judge, no one could be identified in the vehicle. Well, that's what's that. And I think that's a very interesting point because that's what Mr. That's what the detective testified to. But you're saying that the jury actually heard the audio from the dash cam video and in the audio and the video, the officer says there are two people, two occupants, one identified. And when he gets out, he references Terrence Thomas, tells him where the drugs were dropped off in the midst of the chase. Judge, we would submit to you that that was additional hearsay testimony from somebody who never testified to trial, Officer Hunt. And that should have also been objected. Have you raised that in your brief? I did not raise it in the brief. Okay. Go ahead. So, Judge, the big portion that was lacking, I mean, this is these aren't not material, you know, slight trivial things. The main thing that the three bags being thrown out of the vehicle, the sedan, that was complete hearsay, whether it be hearsay through the video dash cam or hearsay from Detective Rosen. But Judge, that went unobjected to classic hearsay and was used by the state for the offer for the truth of the matter, asserted to say that these three bags came from a vehicle, not then say they came from Terrence Thomas. They said they came from a sedan that was registered to Terrence Thomas. Now, if they wanted to convict the sedan, I have no time remaining. Well, you will have an opportunity on rebuttal, Ms. Gilbert. Thank you. Mr. Rodriguez. Thank you, Your Honor. May it please the Court. I'd like to address the sufficiency argument first regarding this case. As counsel indicated, this was a constructive possession case. And one of the tenets of constructive possession is it can be inferred from the facts. That's what this court said in People v. Beverly. And to support that finding, there needs to be an understanding or evidence supporting that the defendant, that the knowledge that the contraband was in his possession was proved by his acts or declarations of conduct, from which could be inferred that he knew it was in the place where it was found. As this court's well aware, the elements of possession and knowledge are rarely susceptible to direct proof and therefore questions of fact for the jury and the fact finder. And also, inferences can be made regarding a defendant's knowledge of control regarding when narcotics are found on the premises under that defendant's control, which is what occurred in this case. There was much discussion about the evidence that was presented in this case. I'd like to go through specifically the evidence that supported the conviction. Regarding Ms. Cunningham's testimony, Ms. Cunningham identified Streets as the defendant. She testified, and it's in the record, that she spoke with the defendant while in the interview room. She recognized the defendant's voice based on their prior interactions and prior transactions. It was Ms. Cunningham who initially used the name Streets. Detective Roseman was familiar with Streets based on his prior knowledge working in the street crimes unit. Therefore, the photo that was shown only occurred as a consequence of Ms. Cunningham using that name and identifying that you have someone who perhaps had a glancing look at a suspect and has shown a photo of Ray. Ms. Cunningham knew the defendant. What about counsel's point that the detective referenced the bookend photo? Your Honor, I don't believe that's a correct recitation of the facts. In the record, it does indicate that he showed a photo. It's my understanding that there wasn't a reference to a booking photo made on the record, merely that a photo was shown to Ms. Cunningham in which she identified. I believe there was some discussion amongst the parties that it was understood it was a booking photo, but I don't believe that exact language was ever used in front of a jury. Even in the hypothetical that it was, Your Honor, I don't think that wins the day for the defendant because the entirety of the case is a bookend photo. Ms. Gilbert has just represented to us that it was referred to as a bookend photo, a mug shot, I think it was. I didn't recall that being the way it was in the record. Now, you're telling me that that wasn't in there. Now, we have a direct conflict on a fairly simple fact. I'd like to know which is true. Was there a reference to mug shot or bookend photo in the presence of the jury? Your Honor, it's my representation. I believe it was not. The only photo, one singular photo of the defendant was printed out by Detective Roseman in Shum. That was the court believes that there was something else. I'm happy to review it in the record. It's my understanding and my assertion that the only statement that was said related to the photo was that it was a photo was shown to her. Whether or not the evidence amongst the attorneys and amongst the court was known that it was a booking photo, I do not believe that language was used in front of the jury. All right. Thank you. Go ahead. Thank you, Your Honor. As indicated, Ms. Cunningham identified Streets as the defendant. As Your Honor correctly identified, the issue is, was Streets the defendant? And all of the evidence pointed to the defendant being Streets. She knew him based on prior testimony or prior interactions, excuse me, which further supported and authenticated the text conversations that occurred. I believe there was also some discussion regarding the numbers that were used. I'd like to clarify that point. In the People's Exhibit, which showed the text conversations between Ms. Cunningham and Streets, the phone number that was captured was 217-775-8197. That was a cell phone number that was captured in the picture and that also was the contact point between the conversations. In that conversation, the defendant and Ms. Cunningham are discussing that she wants to purchase the 4X pills. She says that she's going to, excuse me, she testified that she had told the defendant she wanted 4X pills. As previously indicated, she did have a conversation with the defendant in the presence of Detective Roseman in the interview room. The cell phone conversation that was captured shows that the conversation is that she states to Streets, you know, I'm on my way home and I'm at the ATM. And the language uses, okay, I'll be there. There's no reference to her address where Streets is to go. And that's because this defendant knew where he needed to go based on the testimony of Ms. Cunningham. There was prior contacts and based on those prior contacts, the defendant was familiar with how Ms. Cunningham wanted these drugs to be dropped off, which was testified as well that she had indicated the defendant would just drive up to her home, pull up in the driveway, and they would transact that way. Therefore, and also in addition, while the buy bust is occurring, the defendant is making responses contemporaneous to what's occurring, which further supports the authentication of that text message. He responds something about a buy bust going on with, you know, sort of incredulousness to Ms. Cunningham. She responds, what are you talking about? There would only be two people who would know what's going on with that. Streets, the defendant, and Ms. Cunningham. That specific facts and the knowledge of things that are occurring outside of her home would only be known to the individual who was transporting the drugs to her, which the people assert is and was the defendant. There was a discussion about the subsequent change in the phone number, and I did want to confirm that point as well. The number that the defendant held out to Detective Rosemont following the seizure of the vehicle, days later when the defendant appeared at the police department, that number was 217-519-7927. That phone number is the number that defendant held out as his number. He stated he had that number with him when Detective Rosemont asked him if he was in Decatur on June 11th of 2019. The defendant testified no, that that number that I previously read, the 7927 number, was with him. He had his phone and he testified or he indicated, excuse me, that he was in Chicago during that date. The certification, excuse me, the documents that Detective daily reviewed and that were used in this case supported the inference that the 519-7927 number defendant held out to Detective Rosemont was changed. And that change occurred and the document showed that the change going back was effectuated on the 8197 number, which was Shreet's number. So therefore the jury can make the inference that Shreet's had a number, there was a change that occurred, and that change to the 7927 number was a number that the defendant held out to the detectives as his own personal number. Furthermore, the information that was used in the case to triangulate certain points further discredited the defendant's alibi that he was in Chicago at that time, since by his own admission, the phone number and his cell phone that he kept with him and he stated that he kept with him constantly was nowhere in Chicago, was in Decatur. So it further supported the position that the defendant was in Decatur and was involved in the by-bus and not in Chicago, as he stated. But it also is evidence of the defendant's consciousness of guilt due to the fact that there's a change occurring immediately following the by-bus, the defendant's holding out the subsequent number, that information is identified to be false, and that information is in conjunction to all the other information that the officers learned and obtained during the course of this by-bus. The one point that I think is most salient is that this was the defendant's own vehicle. There was one registered owner to it as the registration evidence shows, and it was the defendant. That's a point that my friend on contrary, that there was other evidence that friends of the defendant's and his family may use the car, were unpersuasive. The jury was entitled to hear that, they did hear that, but they didn't buy that argument since Adrian Barbary, one of the individuals that was said to possibly also drive the defendant's vehicle, was in jail on June 11th of 2019. So it would have been physically impossible for him to have been in the vehicle. And that's at 137 and 138 of the also driving his vehicle. The only testimony to that point was the defendant's mother, who said that the defendant permitted his brother, Mr. Barbary, to use his vehicles, though she couldn't testify that on June 11th, 2019, Mr. Thomas had in fact been driving the vehicle. So in the absence of any evidence to the contrary, the jury was entitled to disregard the defendant's proffered reason or belief that other people may have driven his car and correctly presume that it was the defendant who had been driving on that day. Regarding as well as some of the other evidence that came in, the Decatur Memorial Hospital video footage further contradicted the defendant's alibi, as it showed that he was in Decatur from 830 in the morning to 4pm on the date in question. Detective Roseman testified about observing that video, engaging in classic detective work regarding information he obtained listening to jailhouse calls, and was able to identify that on June 11th, 2019, the defendant's girlfriend was having a baby. And therefore, upon looking at the video evidence and collecting that was able to show that it was the defendant who was there in the hospital at the time in Decatur. I think it's also an important point to make that from Decatur to Chicago and back would have been a completely ridiculous amount of time for the defendant claim that he was possibly in Chicago still, but had just driven away. You know, at the same time, I think the jury heard that argument during the defendant's closing and they disregarded it. At this point, the jury heard that the defendant was in Decatur after his girlfriend had given birth to one of his children. And somehow he then wants the jury to believe that after such a monumental event, he decided to drive up to Chicago randomly. And it just so happens that in that gap while he's in Chicago, his vehicle's used in the attempted transport of narcotics. So I don't think that was a reasonable argument or excuse me, that wasn't a reasonable thing that the jury would conclude. And the verdict shows that they disregarded it, which was obviously their province as the jury to weigh these arguments and the inferences that come from them. I'd like to, unless the court has any other questions regarding the sufficiency of the evidence, turn to the issue of ineffective assistance to counsel. As my friend on the other side indicates, she argues that numerous actions that occurred by trial counsel were examples of ineffectiveness. In this case, your honors, I would argue that there was no ineffectiveness since the entirety of trial counsel's decisions were strategic decisions. And as this court's well aware, strategic choices by counsel cannot sustain a rise of ineffectiveness. As the court presumes, and there's a very high presumption, the actions that counsels take in the litigation of their cases are done in a well-reasoned manner and on sound, reasonable decisions, which is what occurred in this case. Reasonableness under Strickland doesn't require perfect representation. It requires reasonable representation, which is what the defendant was entitled to and received in this case. I would argue furthermore that a possibility that the court may have ruled in defendant's favor on certain objections or in litigating certain pretrial motions and eliminate, as the defendant argues, is not sufficient under Strickland. A possibility the court may have ruled in his favor is not a reasonable probability as required under Strickland. In regards to some of the specific objections regarding the failure to object to the testimony of Detectives Roseman and Wolf, as the people argued, those testimonies came in for the non-heresy purpose to explain the course of conduct of the detective's investigation during the bybus. Detective Roseman testified that he was the point detective. He was observing the incidents occurring on the dash cam video contemporaneously. His perception of the events was rationally based on his observance of the dash cam video. It wasn't hearsay in that he was getting into substantive information. He merely testified, here's what I've served the officers to do. There was a statement that drugs were thrown out. That testimony, the entirety of his the bybus operation, helped to explain to the jury the locations where drugs were found, why the defendant's vehicle was initially at Ms. Cunningham's home, where it was subsequently found, and all of that was proper non-hearsay testimony that came in. And I would argue further, Your Honor, according to people of the this court has said that counsel cannot be ineffective for failing to object if there is no error to object to. And since the testimony of Detective Roseman and Detective Wolf regarding the observations they made and their actions during the course of the bybus operation would not have earned any objection or sustaining by the trial court, then there's no failure in trial counsel's decision not to. I'd also like to discuss the stipulation to the lab report. The defendant argues that it was improper and it was an error for trial counsel to have stipulated that. There were legitimate tactical reasons why trial counsel would have stipulated that information. It's possible that he would have found that the live lab analyst testimony would have been more damning and therefore it was preferable to have a sterile stipulation as to that information. That decision is a tactical choice by trial counsel and the fact that the defendant now is seeking to play a Monday morning quarterback and second-guess trial counsel's decisions on that point doesn't rise to the level of effectiveness. There are no other questions. I would also like to address the denial of failed trial point that the defendant makes to determine whether a defendant's entitled to a right to or whether the fair trial rights been compromised. As this court's indicated, it must decide whether the integrity, reputation, and fairness of the judicial process was compromised. In this case, it was not. As indicated, the certifications that occurred which helped form the basis of the cell phone records were properly admitted. They came in. They satisfied 90211 exactly. There was no objection to that information by trial counsel. That issue was forfeited as well as any of the other issues that were previously discussed. In addition, there would have been no reason to object or the trial court to sustain that information. The defendant can't reasonably argue that there was compromising the integrity of the trial process in this case to satisfy or to furthermore, your honor, your honors, under plain air, the defendant argues that a clear and obvious error occurred. For the reasons I've previously stated, there was no error in the admission of the cell phone records. There was no error in the testimony that was heard by the detectives. So that cannot by themselves sustain the plain air review. Furthermore, the evidence wasn't closely balanced. There was strong circumstantial evidence supporting the defendant's conviction. The defendant failed to satisfy or to show that he was prejudiced. And looking at this under the second prong of plain air, none of the issues that occurred in this case rise to the level of structural error. As this court's aware, structural error exists in very limited circumstances. A complete denial of counsel, a trial before a biased judge, racial discrimination in the bloodier process, you don't have that here. What you have here is allegations of erroneous admission of evidence, which has been found not to rise to the level of second prong structural error. So that's not an avenue for the defendant to obtain relief in this regard. Does the court have any questions? I see none. Your Honor, I see I have one minute left. I'd like to briefly conclude that the jury heard the evidence in this case. It was sufficient, strong, circumstantial evidence of the defendant's guilt, which reasonably supported his conviction for possession of a controlled substance with intent to distribute. The arguments that counsel makes regarding the erroneous admission of They complied completely with 902.11. They were properly admitted under the business record exception to the hearsay rule. The testimony of the detectives came in to explain the course of conduct of their investigation, which is a valid non-hearsay purpose. The complaints that the defendant makes regarding trial counsel's decision to not object to certain evidence or in raising motions, eliminating your hearings or tactical decisions, and they don't justify either plenary review or a denial of the due process right. For those reasons, Your Honor, I would ask that you affirm the defendant's conviction in silence. Thank you very much. Thank you, counsel. Ms. Gilbert, rebuttal. Judge, the trial transcripts on page 162, lines seven and eight, Detective Roseman says, I was going to be arriving at the by bus. I got, I believe, a booking photo of the defendant and asked Ms. Cunningham if that is who she knows as Streets and she identified the defendant as subject she knows as Streets. So that word booking is on line seven of page 162. And judge, in the same manner, these jail phone calls were also inadmissible hearsay. I mean, not only is it highly prejudicial that the detectives talking about a jail phone call as opposed to a normal routine phone call. So with the booking photo, he then has a jail phone call. He said that he could not identify the voice of Terrence Thomas because he hadn't talked to Terrence Thomas before he wasn't certain that Oh, that was Terrence Thomas, but he couldn't identify. He knew that the person was Adrian Barber from some kind of record that wasn't in evidence. But judge, this whole conversation was offered for the truth of the matter asserted that the girlfriend had a baby and that was that Decatur hospital and that's where Terrence was as opposed to Chicago. Judge, all that was hearsay. And it wasn't in the course of conduct. You had the hearsay testimony of the jail conversation. And then you have the hearsay testimony of Google and they read the birth announcement. Then you have the hearsay testimony of Eric, some person we don't even have a last name of that he, you know, knows the layout of this hospital and knows these cameras. You have no foundation for the admission of the Decatur Memorial Hospital video footage, which is another reason that his trial counsel was ineffective. Judge, and then you have all that hearsay coming in to prove that with no foundation, I think they stipulated to the foundation, which was also ineffective, that that was Terrence Thomas at Decatur the day his girlfriend had a baby and he wasn't in Chicago. Judge to say that this case isn't closely balanced is disingenuous. This is circumstantial at best of constructive possession. This case could not be more closely balanced. Judge, there was every piece of it was basically hearsay evidence that was admitted without objection or even by stipulation. The counsel was also ineffective by stipulating to the lab. You have four jars of X ordered. They have a lab for methamphetamine, which the street term is not X. Those are different drugs. And then you have issues about the weight and not only the weight, you have two separate test dates, and that isn't explained at all whatsoever, one in September and one in October. So instead of putting the state to their challenge and making sure that they prove each and every element beyond a reasonable doubt, the trial counsel was ineffective for stipulating to the lab, especially when the subject pills were removed from the original packaging so that the packaging could be tested by a forensic scientist from the Illinois State Police, which resulted in no fingerprints. Judge, the only possible... What's wrong with removing them from the bag? Well, Judge, we don't know if they... They didn't commingle them. They put them in four separate bags. Right, but you only have a portion of each bag tested, and then you have not an expert, but... Did they test up to the minimal quantity for that class offense? When added together, Judge, but the problem with the way it went in is... Well, yeah, but he's charged with when they're added together. So if they've tested up to the minimum amount for the class of that offense, I would imagine you're aware that that's been the practice of the Illinois State Police Crime Laboratory for quite a while, that because of volume, they test up to the minimum of any particular class level, and then they stop there because unless it's enough to get them into the next class, there's no reason to test all parts of the substance, as long as you can see that it's clearly identifiable, especially when you're talking about pills. We're not talking about the commingling of powders or 100 pill bags, which just happens to be what she ordered, and they test up to the minimum amount of the total of the four bags. So isn't that the standard procedure for the Illinois State Police Crime Laboratory? Well, yes, Your Honor, I agree that they test up to the minimum. So that is not what I'm trying to contest. So you're saying that the procedure that the Crime Lab has been using now for years somehow creates an ineffective assistance of counsel unless you get the entire amount tested? No, what I'm saying is ineffective is there was testimony. First of all, she ordered X and you get methamphetamine. Then you have three separate packages, and only one in his car or car that's registered to him. But you have two different test dates, right, of October. I think it was October 24th of 2019, and then an earlier date in September. And despite all that, the ecstasy versus methamphetamine, the bags being or the pills being removed, and you don't have the testimony that, well, each pill was a white pill with this marking. You don't have that detailed testimony linking up. All of the pills is coming from the same manufacturer or the same, you know, the same source. Judge, so with all... You're saying that that's the evidence that's required? Are you saying that's the evidence that's required in every case? That you have to link up what the... That each pill, it comes from the same manufacturer? Well, Judge, there was no doubt that there were packages, and then the one in his car. You had no testimony linking up that these pills were uniform in appearance or markings. Okay. Well, unfortunately, your time is up. Thank you, counsel. Court will take this matter under advisement. The court stands in reason.